No. 25,243.

THE TEXAS BRIDGE COMPANY, *Appellee,* v. THE BROWN-CRUMMER INVESTMENT COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of County Warrants—Contract Binding.* Where a contract for sale by plaintiff to defendant of county warrants was made, leaving only customary details well known to both parties to be supplied, and where the defendant acquiesced in arranging such details, it was bound by its contract of purchase.

2. SAME—*Proof of Defendant's Attorney.* The evidence examined and held sufficient to support a finding that an attorney who prepared the proceedings was acting as attorney for the defendant.

3. SAME—*Breach of Contract by Defendant—Refusal to Accept Warrants—Plaintiff's Remedy—Resale of Warrants.* And where the defendant had originally contracted to take the warrants at 97 cents, and later declined, stating as a reason that it "could not afford to make further investments in Texas warrants," the plaintiff was justified in selling the warrants at the best price obtainable, and was entitled to recoup its damages from the defendant for failure to purchase the warrants as agreed.

4. SAME—*Insufficient Excuse for Refusing to Accept Warrants.* Where a course of dealings between the parties showed the defendant had agreed to purchase "Texas securities in large and small amounts," and that it acquiesced in arranging the maturities and other details of the warrants in question, and where the defendant acknowledged the legality of the warrants, the defendant was not justified in refusing to purchase them on the ground that some of them were denominated "refunding warrants" instead of "road and bridge warrants," or "road and bridge warrants" instead of "funding warrants."

5. SAME—*Under Facts, Notice to Defendant of the Time and Place of Resale of Warrants Unnecessary.* Under the facts stated in the opinion, it was not necessary that the defendant be notified of the time and place of sale,

where it had, in the first instance, declined to take the warrants at the agreed price of 97 cents, and just before the sale declined to take them at 85 cents "except as a complete settlement" of its controversy with the plaintiff.

Appeal from Sedgwick district court, division No. 2. THORNTON W. SARGENT, judge. Opinion filed January 10, 1925. Affirmed in part and reversed in part.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claud I. Depew,* and *James G. Martin,* all of Wichita, for the appellant.

*Jean Madalene,* of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages because of failure and refusal to accept certain securities according to contract. Each party prevailed in part, and both appeal.

The plaintiff is engaged in the business of buying and selling road machinery and building bridges in the state of Texas. The defendant is engaged in buying and selling municipal securities. The plaintiff, in selling road machinery and doing bridge work for counties in Texas, ordinarily received its pay in county warrants. It had sold several issues of warrants to defendant prior to this controversy. This action involved issues of · county warrants of three counties—Archer, Hall and Hood. The trial court entered judgment for plaintiff on account of the Archer county warrants, but denied judgment on the Hall and Hood county warrants. The plaintiff filed a cross-appeal, alleging error by the trial court in refusal to award judgment on account of Hall and Hood county warrants.

The facts are substantially enumerated in the findings of the trial court, which recite, *inter alia:*

That on September 8, 1919, defendant wrote plaintiff: "I feel that the best basis that we can work on on these Texas securities of large and small issues would be 97 cents and expenses." That on December 16, 1919, plaintiff wrote defendant, *inter alia:* "We have made a contract with Archer county to handle $20,000 worth of time warrants. We hereby contract them to you at 97 cents and will not be able to make delivery until some time in the spring, as they want to get in some bridge work and machinery that they want to buy between now and that time and put it in this issue. We think when the time comes to close up with them there will be

$30,000. We have arranged with Hood county to handle $10,000 more of refunding warrants to become due as follows," etc. That on December 27, 1919, the defendant canceled its offer of September 8, 1919, by writing: "Market conditions are in such shape at the present time that we are compelled to withdraw any commitments that we have with you for the purchase of county warrants. This, of course, only applies to contracts that have not yet been executed." That on December 27, 1919, and prior to the receipt of the ·order of cancellation, the plaintiff had obtained alleged contracts with Archer county for $20,000, with Hood county for $10,000, and with Hall county for $7,344, and which contracts were reported by plaintiff to defendant prior to such cancellation. That on January 3, 1920, the defendant acknowledged prior receipt of notice of contracts with Archer, Hood and Hall counties, and which notice was received prior to cancellation date, December 27, 1919, and informed plaintiff: "Of course the Archer, Hood and Hall county issues are already contracted for and are satisfactory to us." That prior to writing the letter of January 3, 1920, the defendant knew that the contracts with the several counties referred to were. not final. That on January 22, 1920, plaintiff informed defendant that the Archer and Hood issues would be delayed about 90 days; that the maturity dates were as yet undetermined and at that time (January 22, 1920) the defendant knew the legal form of the various issues had not been determined upon, and this arrangement and condition were acquiesced in by the defendant. That on January 27, 1920, the defendant wrote plaintiff: "There will be no charge to you for the preparation of proceedings." That on June 1, 1920, defendant requested information relative to the Archer and Hood county matters in the following direction to plaintiff: "Let us have that information on Archer and Hood counties before submitting to Harris." That Mr. William Harris was the attorney of the Texas Bridge Company and also of Brown-Crummer Company. The latter company relied upon Harris to see that all of the proceedings in the issue of the warrants were regular and legal. That on June 7, 1920, plaintiff wrote defendant: "Replying to your letter of June 1 regarding the Archer and Hood county issues, beg to say that I took the papers to Harris when I left you in Dallas. I am expecting the proceedings to arrive here to-morrow and will send you a list of maturities of the $42,000. I am making them come due with early maturities just as you suggested, and

hope to be able to get them through on that basis. . . . I am making the Hood county maturities as early as Harris will approve them also." That on August 12, 1920, defendant wrote plaintiff, *inter alia:* "We have come to the conclusion that we cannot afford to make further investments in Texas warrants either for ourselves or for our clients; . . . therefore we are returning the Archer county proceedings, together with executed warrant No. 1, and have instructed our bank to return the other 39 warrants of this issue." (The proceedings referred to as returned were the proceedings prepared by Mr. Harris, the attorney.) That the Archer county road and bridge warrants on the amount of $29,500 on June 15, 1920, are for material, labor and obligations furnished and incurred by the plaintiff prior to December 29, 1919, and were so dated by Harris for the purpose of embodying in legal form the prior contracts of plaintiffs with Archer county. That the funding warrants issued by Hall county on June 18, 1920, were so issued at the instance of William Harris and were for the purpose of taking up outstanding warrants issued against the road and bridge fund of said county for warrants issued to the plaintiff on March 3, 1920, for $7,344. That the contract entered into by plaintiff on June 15, 1920, and the commissioners of Hood county, Texas, was prepared by William Harris, and the consideration therefor was work, labor and obligations incurred prior to December 27, 1919. That the contracts, supposedly entered into with Archer, Hood and Hall counties prior to December 27, 1919, were delivered by plaintiff to William C. Harris, who was retained to prepare the legal requirements necessary to enable him to approve the various issues. Mr. Harris, to suit his own ideas, changed the proceedings and dates of maturities, but all acts shown in the subsequent proceedings prepared by Mr. Harris and executed by the officials of Archer, Hood and Hall counties were based on the original supposed contracts offered defendant by plaintiff prior to December 27, 1919. That the warrants of Archer county were formally tendered to the defendant by the plaintiff on July 12, 1920. That the warrants of Hall and Hood counties, in controversy, were never formally tendered by plaintiff to the defendant; that a formal tender would have been useless as the defendant informed plaintiff that it would not accept such warrants.

The court concluded, *inter alia:* That by correspondence and conversations between plaintiff and defendant a working arrange-

ment had been entered into by them prior to December 27, 1919, by which the plaintiff was to offer to defendant warrants issued or to be issued by counties in Texas to plaintiff for machinery furnished or to be furnished and road work performed or to be performed by plaintiff, and which defendant would purchase if the rate of interest which the warrants bore and the proceedings on which they were based were satisfactory to defendant. That the delay in the Archer, Hood and Hall counties' issues was reasonable under the contracts between the parties. That the letters between the parties make a contract by which the defendant was to purchase of plaintiff $20,000 of the Archer county time warrants, the Hall county warrants for road machinery, which was afterwards determined to amount to $7,344, and $10,000 of Hood county refunding warrants. That by certain correspondence thereafter the plaintiff conceded that the defendant was required to purchase only $20,000 of the Archer county warrants. That the plaintiff should recover of the defendant, as damages for failure to purchase the Archer county warrants, $3,405.53. That the defendant was not liable for failure to purchase the Hall county warrants for the reason that the warrants offered were funding warrants and not road and bridge warrants, as specified in a letter by the plaintiff to the defendant, dated December 16, 1919. That the defendant was not liable for failure to purchase the Hood county warrants for the reason that they were contract warrants and not refunding warrants, as specified in the letter of December 16, 1919.

The controversy turns largely on the question as to whether William Harris was attorney for the defendant. The defendant contends that there was no competent evidence to support the finding that he was. There was both written and oral evidence on the point. On August 19, 1919, the defendant wrote the plaintiff: "Replying to your letter of August 16, we would be glad to take up the Hood county funding warrants just as soon as we receive the approving opinion from our attorney, Mr. W. M. Harris." The letter was offered in evidence but rejected, presumably because it was claimed by the defendant that the letter was written by a Mr. Tucker, who was not at the time of writing the letter familiar with the work in defendant's office. It appears, however, that while the court declined to admit the letter when offered in evidence, it was afterwards considered as a part of the evidence. The sixteenth finding reads:

"Mr. William Harris was the attorney of the Texas Bridge Company and also of Brown-Crummer Company. (Exhibit 14.) The latter company relied upon Harris to see that all of the proceedings in the issuing of the warrants were regular and legal."

The case having been tried to the court, it was within the power of the court to reconsider his ruling excluding the letter. This he undoubtedly did. However, we are of the opinion there was sufficient evidence, aside from the letter, to sustain the finding of the court that Mr. Harris was acting as attorney for the defendant in the matters in controversy. On January 14 defendant wrote plaintiff that they (the defendant) had been paying Mr. Harris for his approving opinion, but that his (the writer's) recollection was that the plaintiff was to pay therefor, and asked plaintiff's president to state his recollection of the matter. Mr. Lowe, president of the plaintiff company, responded: "We have not paid Mr. Harris for preparing any proceedings and have understood from his office that you have paid his charges without question and promptly, so we did not think there was any question on this point." On January 27, 1920, the defendant wrote plaintiff: "We are marking our records so that there will be no charge to you for the preparation of proceedings." On January 22, 1920, plaintiff offered to prepare the various issues without submitting to Mr. Harris, saying: "In many of these issues we can copy the forms used by Mr. Harris and save expense, and will do so if you desire." The defendant requested that the matter of maturities be submitted to Mr. Harris, and the maturities were changed by Mr. Harris. On June 7, 1920, the plaintiff wrote defendant: "Replying to your letter of June 1 regarding the Archer and Hood county issues, beg to say that I took the papers to Harris when I left you in Dallas. I am expecting proceedings to arrive here to-morrow and will send you a list of the maturities of the $42,000. I am making them come due with early maturities just as you suggested, and hope to be able to get them through on that basis. I am making the Hood county maturities as early as Harris will approve them also."

Mr. Lowe, president of the plaintiff, testified:

"I took these contracts to Brown-Crummer's attorney at Dallas, Mr. Harris. Mr. Harris wanted to make up these proceedings to suit his own idea, and he changed the date of the maturities and procedure in carrying out these original contracts that we made with this county. . . ."

"Mr. Depew: We object to Mr. Harris as being Brown-Crummer's attorney put in evidence.

"The Court: Overruled.

"A. And that accounts for the change in the date of these warrants, the three issues for Hood county, Archer county and Hall county. On some of these matters I already had warrants issued by the counties which I intended to put into a refunding warrant issue.

"Q. At whose suggestion was that being done  A. At Brown-Crummer's suggestion."

There appears to have been no objection to the witness' statement of what he did, and at whose suggestion. There was oral testimony by the defendant denying that Mr. Harris was the defendant's attorney. The trial court heard the evidence and resolved the dispute in favor of the plaintiff. The evidence was sufficient to sustain the finding, and under the circumstances it will not be disturbed.

We have examined the evidence, which consisted largely of correspondence, and conclude that the trial court's findings of fact were amply supported. The court's conclusion, in so far as the $20,000 of Archer county warrants was concerned, was correct, but we are of opinion that the court erred in its conclusion relative to the Hall and Hood county warrants. The defendant had agreed to purchase "Texas securities of large and small issues." It was well understood that the "securities" were warrants issued by various Texas counties in payment for road machinery and bridge work. Some were "contract warrants" some "funding warrants" and some "refunding warrants." No distinction appears to have been drawn between the different kinds of county warrants until the defendant concluded it could not afford to purchase them. The trial court concluded that the defendant was not liable on account of failure to buy the Hall county warrants, because they were "funding warrants" and not "road and bridge warrants"; that the defendant was not liable for failure to purchase the Hood county warrants, because they were "contract warrants" and not "refunding warrants." These warrants, by whatever name called, were certificates of indebtedness. They were recognized by the parties as Texas securities. In the case of Hall county they were put in form and issued as "funding warrants" at the instance of William Harris.

The reason the defendant declined to take the warrants was contained in a letter of the defendant to the plaintiff on August 12, 1920, "We cannot afford to make further investments in Texas warrants," and not because they were not warrants as contracted for. While all the details or features of the warrants were not mentioned or specified in the correspondence, it was not necessary that they should be. There was a meeting of the minds of the parties on the

essentials necessary to a binding contract. (*Brown-Crummer Co. v. W. M. Rice Const. Co.*, 285 Fed. 673.) Furthermore, the defendant acquiesced in the details that had not been originally mentioned.

The defendant complains that it had no notice of the time and place of resale of the warrants. Under all the circumstances we do not regard notice to the defendant of a resale as necessary. (35 Cyc. 523.) The court found that plaintiff, on September 24, 1920, offered the Archer county warrants to defendant at 85 cents, saying: "We are compelled to sell them at the best price obtainable. If you will purchase all or any of them at any price we will be glad to have your offer." The defendant accepted the offer, and when the warrants were about to be shipped defendant added to the condition of purchase, "a complete settlement." The plaintiff declined to sell them to defendant under the conditions specified. Under all the circumstances, plaintiff is entitled to an affirmance of the judgment on account of the Archer county warrants; also to recover on its cross-appeal on account of the Hall and Hood county warrants.

The judgment for plaintiff will be affirmed, and the judgment for defendant on account of the Hall and Hood county warrants will be reversed and the cause remanded with directions to render judgment for plaintiff.